IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| MICHAEL THOMAS, | * | |
|---|---|---|
| Plaintiff, | * | |
| v. | * | Civil Action No.: RDB-17-1249 |
| PROGRESSIVE LEASING | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Michael Thomas ("Plaintiff" or "Thomas") brings this action against Defendant Progressive Leasing ("Defendant" or "Progressive"), alleging a single cause of action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. (Compl., ECF No. 1.) Currently pending before this Court is Defendant's Motion to Compel Arbitration and to Dismiss or Stay the Litigation. (ECF No. 9.) The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated herein, Progressive's Motion to Compel Arbitration and to Dismiss or Stay the Litigation (ECF No. 9) is GRANTED and this case is DISMISSED.

## BACKGROUND

From September 2015 to February 2017, the Plaintiff Thomas sought financing from the Defendant Progressive in order to lease jewelry. (Thatcher Decl., ECF No. 9-3 at ¶¶ 5-6.) Specifically, Thomas applied six times for financing. (*Id.* at ¶ 5.) For various reasons, however, Progressive denied Thomas's applications. (*Id.* at ¶ 6.) On November 28, 2015, Plaintiff's wife, Joann Carter, successfully applied for and entered into a lease with

1

Progressive to lease diamond earrings and a watch ("the Lease"). (ECF No. 11-1 at 1.) The Lease contains an arbitration provision requiring arbitration of any "claim, dispute or controversy between [Carter] and [Progressive] (including any Related Party) that arises from or relates in any way to this Lease or the Property." (Def. Exh. 1, ECF No. 9-4 at ¶ 13.) In addition, the Lease expressly permits Progressive to call Carter at any number that she provides to Progressive. (*Id.* at ¶ 9.)

On December 31, 2015, a Progressive representative called Carter on her cell phone because a payment on the Lease had not been received. (Def. Exh. 2, ECF No. 9-5.) Since Carter was driving when she received the call, she handed her phone to her husband, the Plaintiff Thomas, who was also in the car. (*Id.* at 2.) When Progressive told Thomas that a payment had not gone through, Thomas told the Progressive representative that Progressive could contact him to collect the debt and told the representative to write Thomas's phone number down. (*Id.* at 2-3.) In addition, Thomas told the representative to remove his wife's credit card number from the account and to "transfer [the account] over" to his credit card number. (*Id.*)

Soon after giving Progressive his phone number and credit card number, Thomas began receiving calls from Progressive. (ECF No. 1 at ¶ 12.) Like the initial call to Carter, the calls were made to collect the account balance owed under the Lease. (*Id.* at ¶ 15.) In his Complaint, Plaintiff claims that Progressive made the calls using an automatic telephone dialing system, automated message, and/or prerecorded voices. (*Id.* at ¶¶ 12, 13.) In addition, Plaintiff claims that he spoke with additional Progressive representatives and told them to stop calling. (*Id.* at ¶ 16.) Despite these requests, Progressive kept calling Thomas, sometimes

multiple times per day. (*Id.* at ¶ 18.) Plaintiff filed this action on May 5, 2017, alleging that the Defendant Progressive repeatedly called his cell phone using a telephone dialing system, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227. (ECF No. 1.) Shortly thereafter, Progressive filed a Motion to Compel Arbitration and to Dismiss or Stay the Litigation based on the arbitration agreement in the Lease between Progressive and Thomas's wife. (ECF No. 9.)

### STANDARD OF REVIEW

Defendant has filed the pending Motion to Compel Arbitration (ECF No. 9) pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* The standard of review on a Motion to Compel Arbitration pursuant to the FAA is "'akin to the burden on summary judgment.'"[1] *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 85 (4th Cir. 2016) (quoting *Chorley Enterprises, Inc. v. Dickey's Barbecue Restaurants, Inc.*, 807 F.3d 553, 564 (4th Cir. 2015)). Therefore, motions to compel arbitration "shall [be] grant[ed] … if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Rose v. New Day Financial, LLC*, 816 F.Supp.2d 245, 251-52 (D. Md. 2011).

A party seeking to apply the FAA must demonstrate four elements: "'(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration

---

[1] Although the Fourth Circuit has characterized the standard of review on a Motion to Compel Arbitration as "*akin to* the burden on summary judgment," the pending motion will not be converted to or treated as a motion for summary judgment. On the contrary, the remedies available to a defendant moving to compel arbitration are limited to a stay or dismissal of the action. *See Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) ("[T]he FAA requires a district court, upon motion by any party, to stay judicial proceedings involving issues covered by written arbitration agreements [citing 9 U.S.C. § 3] . . . . Notwithstanding the terms of § 3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable. [citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)].")

provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.'" *Galloway*, 819 F.3d at 84 (quoting *Rota–McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 696 n.6 (4th Cir. 2012)). Therefore, "although arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate.'" *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 501 (4th Cir. 2002) (quoting *Arrants v. Buck*, 130 F.3d 636, 640 (4th Cir. 1997)). The Supreme Court has directed courts to "apply ordinary state-law principles that govern the formation of contracts" and "federal substantive law of arbitratbility." *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005); *see also Heller v. TriEnergy, Inc.*, 877 F.Supp.2d 414, 423-24 (N.D.W.V. 2012) (explaining that the "one important caveat to the reach of the FAA" is that state law governs the formation of the contract (citing *Hill*, 412 F.3d at 543)).

## ANALYSIS

The Plaintiff Thomas does not dispute that there is a valid arbitration agreement contained in the Lease between Progressive and his wife. Rather, he argues that because he is neither a signatory nor a beneficiary to the Lease, the arbitration agreement is not enforceable against him. Progressive asserts that although Thomas is a nonsignatory to the Lease, he can be compelled to arbitrate under the theory of equitable estoppel.

Whether Thomas is equitably estopped from denying that he is bound to arbitrate is governed by the Federal Arbitration Act ("FAA"). *See R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n, Inc.*, 384 F.3d 157, 160 n.1 (4th Cir. 2004) (explaining that determining whether a nonsignatory is bound by a contract containing an arbitration provision does not

4

present a state law question of contract formation or validity and therefore courts look to the FAA to determine whether the non-signatory can be compelled to arbitrate under the contract); *see also Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 n.4 (4th Cir. 2000) ("Because the determination of whether [the plaintiff], a nonsignatory, is bound by the … contract presents no state law question of contract formation or validity, we look to the "federal substantive law of arbitrability" to resolve this question.").

"Equitable estoppel precludes a party from asserting rights 'he otherwise would have had against another' when his own conduct renders assertion of those rights contrary to equity." *Int'l Paper Co.*, 206 F.3d at 417-18 (citations omitted). In the arbitration context, the theory of equitable estoppel recognizes that "it is clear that under some circumstances . . . 'a party can agree to submit to arbitration by means other than personally signing a contract containing an arbitration clause.'" *Osborne v. Marina Inn at Grande Dunes, LLC*, No. 4:08-cv-0490, 2009 WL 3152044, at *9 (D.S.C. Sept. 23, 2009) (quoting *Int'l Paper Co.*, 206 F.3d at 416).

When the signatory to an arbitration agreement seeks to compel a nonsignatory to arbitrate, the Fourth Circuit applies the "direct benefit" test. *Int'l Paper Co.*, 206 F.3d; *R.J. Griffin*, 384 F.3d.[2] Under this test, "'[a] nonsignatory is estopped from refusing to comply with an arbitration clause when it [is seeking or] receives a direct benefit from a contract

---

[2] The Fourth Circuit has articulated a very similar "rely on test" test when the *nonsignatory* to an arbitration agreement is attempting to compel a signatory to arbitrate. *Brantley v. Republic Mortgage Ins. Co.*, 424 F.3d 392 (4th Cir. 2005); *Am. Bankers Ins. Group, Inc. v. Long,* 453 F.3d 623, 627-28 (4th Cir. 2006). This test applies equitable estoppel "when the signatory to a written agreement containing an arbitration clause must rely on the terms of the … agreement in asserting its claims against the nonsignatory." *Brantley*, 424 F.3d at 395-96.

5

containing an arbitration clause.'" *R.J. Griffin*, 384 F.3d at 161 (quoting *Int'l Paper Co.*, 206 F.3d at 418). This test "recognizes that a nonsignatory should be estopped from denying that it is bound by an arbitration clause when its claims against the signatory 'arise from' the contract containing the arbitration clause." *Am. Bankers Ins. Group, Inc. v. Long*, 453 F.3d 623, 628 (4th Cir. 2006) (citing *R.J. Griffin*, 384 F.3d at 162); *see also Int'l Paper Co.*, 206 F.3d at 418 ("[A] party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that the other provisions of the same contract should be enforced to benefit him.").

A nonsignatory's claims "arise from" a contract containing an arbitration provision when the claims seek to enforce rights contained in that contract. *See Riek v. Xplore-Tech Servs. Private Ltd.*, No. 1:08CV117, 2009 WL 891914 (M.D.N.C. Mar. 31, 2009) (holding that the plaintiff was equitably estopped from avoiding an arbitration provision in an agreement when he was trying to enforce another provision in that same agreement); *see also Williamsport Realty, LLC v. LKQ Penn-Mar, Inc.*, No. 3:14-CV-118, 2015 WL 2354598, at *5 (N.D.W.V. May 15, 2015) ("[C]ourts in the Fourth Circuit apply equitable estoppel against a nonsignatory when the nonsignatory's claims seek to enforce rights contained in the contract with the arbitration provision.").

Defendant Progressive argues that the Plaintiff Thomas is equitably estopped from avoiding the arbitration provision in the Lease because he "ostensibly shared access to the leased property," "voluntarily made payment arrangements" with Defendant, and requested that Defendant call him directly, "presumably to prevent repossession of the leased property

6

and to ameliorate Joann's credit." (ECF No. 9-2 at 11.) In addition, Progressive argues that Thomas's claim derives from the Lease because the claim "is solely based on his allegation that Prog Leasing placed calls to his number in order to collect payment under the lease," and "any calls that were placed by Prog Leasing to Plaintiff were made because Plaintiff assumed responsibility under the Lease." (ECF No. 12 at 6) (emphasis omitted). In response, Plaintiff argues that he cannot be compelled to arbitrate because he is not a signatory to the Lease and his TCPA claim is a separate tort claim independent of the Lease. (ECF No. 11-1 at 4.)

In *Bridge v. Credit One Fin.*, No. 2:14-cv-1512-LDG-NJK, 2016 WL 1298712 (D. Nev. Mar 31, 2016), the United States District Court for the District of Nevada addressed a motion to compel arbitration with similar circumstances. In *Bridge*, the plaintiff's mother held an account with the defendant, Credit One Bank, and the cardholder agreement contained an arbitration provision. *Id.* When the plaintiff became concerned that his mother could no longer keep track of her finances, the plaintiff sought access to his mother's account information. *Id.* The plaintiff then called Credit One Bank, entered his mother's validation information, and gained access to her account information. *Id.* By doing so, his phone number became associated with the account. *Id.* When his mother's account became delinquent, Credit One Bank called the plaintiff's phone number to recover the debt. *Id.* Subsequently, the plaintiff brought a TCPA claim. *Id.* at *1-2. Applying equitable estoppel, the court held that the plaintiff could be compelled to arbitrate because the TCPA claim arose from and directly related to the duties imposed on Credit One Bank under the cardholder agreement. *Id.* at *3 (citing *Am. Bankers Ins. Co.*, 453 F.3d at 627-28). In addition,

7

the court found that the plaintiff had "benefitted from the agreement by calling Credit One, inputting his mother's validation information, and gaining access to his mother's financial information." *Id.* at *2-3.

Joann Carter, Thomas's wife, applied for a lease with Progressive during the time that Thomas tried unsuccessfully six times to enter into his own lease with Progressive. (ECF No. 9-3 at ¶¶ 5-7.) When Carter's application was successful, she entered into the Lease with Progressive that contains the arbitration provision. (*Id.*) Thomas now argues that because it is his wife's—and not his own—signature on the Lease, he cannot be compelled to arbitrate. However, like in *Bridges* where the plaintiff voluntarily called the defendant, Progressive only called Thomas after Thomas voluntarily gave a Progressive representative his phone number with the intent that Thomas's information be associated with his wife's account. The Lease gives Progressive the right to call any telephone number provided to it. (ECF No. 9-4 at ¶ 9.) Thereby, when Thomas gave the Progressive representative his phone number, he gave Progressive the right to call him. The TCPA claim, then, stemming from Progressive's calls to Thomas, arises from Thomas giving Progressive the right under the Lease to call him in the first place. Therefore, as in *Bridge*, Thomas's "allegations arise from and relate directly to the duties imposed on [Progressive under its Lease with Carter], and therefore . . . arbitration should be compelled even though [Thomas] was not a signatory to the agreement." *Bridge*, 2016 WL at *3 (citing *Am. Bankers Ins. Co.*, 453 F.3d at 627-28).

Further, in addition to providing Progressive with his phone number, Thomas also told the Progressive representative to use his credit card, "transfer [the account] over to my stuff," and clear off his wife's credit card number. (ECF No. 9-5 at 2-3.) By doing so,

8

Thomas voluntarily assumed the obligation of payment under the Lease, which, if properly made, prevents Progressive from repossessing the jewelry. Therefore, Thomas derived a benefit from the Lease. *See A.D. v. Credit One Bank, N.A.*, No. 14-C-10106, 2016 WL 4417077 (N.D. Ill. Aug. 19, 2016) (considering in its equitable estoppel analysis that the plaintiff seeking to avoid an arbitration clause in a cardholder agreement had previously benefited from the agreement because it was what authorized her to use her mother's credit card). Accordingly, this Court finds that it would be inequitable to allow Thomas to pursue his TCPA claim against Progressive for calls it made to Thomas to collect on the Lease, and yet permit him to avoid the arbitration provision in that same Lease.

The Defendant Progressive has requested that this case be dismissed or, in the alternative, stayed. (ECF No. 9.) While Section 3 of the FAA requires that, where a court is satisfied that a suit or proceeding is referable to arbitration, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. Nevertheless, the United States Court of Appeals for the Fourth Circuit has clearly held that "[n]otwithstanding the terms of § 3 . . . dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F. 3d 707, 709-10 (4th Cir. 2001). Specifically, in light of this Fourth Circuit authority, this Court has dismissed cases where all the claims were subject to binding arbitration agreements. *Doe v. New Ritz, Inc.*, No. RDB-14-2367, 2016 WL 1642933 (D. Md. Apr. 26, 2016); *SC&H Group, Inc. v. Atlus Group U.S., Inc.*, No. WMN-16-1037, 2016 WL 3743055 (D. Md. July 13, 2016); *Byrnes v. Santa Fe*

*Natural Tobacco Co., Inc.*, No. GLR-16-2445, 2017 WL 713911 (D. Md. Feb 23, 2017). While Thomas objects to enforcing the arbitration agreement as a whole against him, he does not contend that, if the agreement applies, his claim against Progressive is beyond the scope of the Lease's arbitration provision. Further, this Court has held that TCPA claims may be properly subject to arbitration. *Roach v. Navient Solutions, Inc.*, 165 F.Supp.3d 343, 348 (D. Md. 2015). Accordingly, Defendant's Motion to Compel Arbitration and to Dismiss or Stay the Litigation (ECF No. 9) is GRANTED.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Compel Arbitration and to Dismiss or Stay the Litigation (ECF No. 9) is GRANTED and this case is DISMISSED.

A separate Order follows.

Dated:  October 25, 2017                     /s/                    

                                              Richard D. Bennett
                                              United States District Judge